## Bogie, etc. v. Nelson.

(Decided January 9, 1913.)

### Appeal from Fayette Circuit Court.

1. Bills and Notes—Defense That Married Woman Was Surety—Pleading.—The defense that a married woman was a surety in a note is not available unless pleaded.

2. Bills and Notes—Liability of Married Women.—A married woman who borrows money is liable on the note given for it although she borrowed it for the use of another.

3. Contracts—Suit on Written Contract—Insanity as Defense—Inquest.—When in a suit on a written contract the defense is made that one of the defendants was of unsound mind when it was

executed, it is not necessary that the court should hold an inquest but the issue may be tried on the evidence taken in the case.

R. S. CRAWFORD, for appellant.

FORMAN & FORMAN, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

In August, 1909, C. C. Monroe was arrested under a criminal charge in Lexington and taken to Elkton for trial. He, his mother, Maria Monroe, and his sister, Matilda Bogie, executed a note for $600 to Amanda V. Nelson, and also a mortgage to secure it on a tract of land formerly owned by his father but then in the possession of his mother, himself and his sister, he and his sister owning the remainder subject to his mother's dower. His wife joined in the mortgage, but his sister's husband, David Bogie, did not sign it. This suit was brought against them by Amanda V. Nelson to recover on the note and enforce the mortgage. It was shown by the proof in the action that they only in fact received $550. The circuit court entered a judgment in favor of the plaintiff on the note for $550 against each of the three persons who signed it. He enforced the mortgage as to C. C. Monroe and his mother, but declined to enforce it as to Matilda Bogie, as her husband did not sign it. From this judgment Matilda Bogie and Maria Monroe appeal.

It is insisted for Matilda Bogie that she is not bound on the note because she received none of the benefits of the money and if liable at all she is liable only as a surety. But she did not plead this defense. She nowhere alleged that she was only a surety in the note in her answer or in her amended answer, or stated any facts necessary to show this. Where a married woman signs an obligation and relies on the defense that she is only a surety, and is not bound because her husband did not join her in it, this defense must be pleaded. (Wrenn v. Ficklin, 109 Ky., 472). In addition to this the proof shows that she and her mother borrowed the money after her brother was taken to Elkton and that the money was lent to them and paid out on their written order. While a married woman may not mortgage her land unless her husband joins in the mortgage she may make contracts as if she were single, except in cases where it is provided otherwise in the statute. She may borrow

money just as a single woman under the statute, although she borrowed it for the use of another.

It is insisted for Maria Monroe that in the answer filed in the circuit court it was alleged that Maria Monroe was at the time of the execution of the mortgage and the note, a person of unsound mind, and incapable of understanding the nature and character of the act. It is insisted that the court erred in failing to impanel a jury to inquire into the condition of her mind and to appoint some competent person to represent her and make a defense for her as prayed in the answer. But this allegation of the answer was denied in the reply, and the proof showed beyond any question that Maria Monroe was not of unsound mind, but fully understood the transaction. In fact, no effort was made to show any incapacity on her part. This case is unlike Howard v. Howard, 87 Ky., 616, Snowdon v. Smith, 119 S. W., 785. In those cases the question was made whether the plaintiff in the action was of sound mind, or had sufficient capacity to sue, and in the last case the court refused to reverse the chancellor's judgment, although he had not held an inquest, when an affidavit was filed showing the incapacity of the plaintiff. In this case there was no allegation that Maria Monroe was of unsound mind at the time the answer was filed or in any way then incapacitated to defend the action for herself. The proof shows that she was in a normal condition and the chancellor properly enforced the contract.

Judgment affirmed.